## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

EMMANUEL SEWELL                    *

    Plaintiff                          *

        v                            *          Civil Action No. DKC-12-2656

WARDEN BOBBY SHEARIN, et al.       *

    Defendants                         *
                        ***

### MEMORANDUM OPINION

On January 7, 2013, this court construed Defendants' Response to Show Cause (ECF No. 12) as a Motion for Summary Judgment and granted Plaintiff 28 days to file a Response in Opposition. ECF No. 15. The only responsive papers received from Plaintiff are a Motion for Intervention and Declaration in Support. ECF No. 16 and 17.[1] The court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Plaintiff Emmanuel Sewell ("Sewell"), a frequent litigator in this court, alleges his legal mail is confiscated on a regular basis; that at times his legal papers are given to jailhouse lawyers who alter the papers before they are mailed to the intended party; and that correctional officers are permitting Sunni Muslims and prison gang members to harass him. ECF Nos. 1 and 4. Sewell maintains that the numerous correctional officers named in the Complaint and Amended Complaint take his legal papers, read them, and either dispose of them or give them to other inmates to alter.

Sewell claims his papers are read and discussed among the officers and that he is harassed by other inmates regarding the claims he writes. He alleges that his informal brief filed

---

[1] The papers were docketed on January 11, 2013 and January 23, 2013, respectively.

with the Fourth Circuit Court of Appeals was one of the documents that was confiscated and altered.[2]  ECF No. 4 at pp. 7-8.  Sewell also claims that in the same case and another appeal which was pending at the same time, counsel for appellees was ordered to investigate why his papers had not been received and the "court's docket was suddenly flooded with my legal papers that may not have been originals."[3]  ECF No. 4 at pp. 7 – 8.

On occasion, Sewell admits seeing officers put his legal papers in the outgoing mail.  He also claims other officers were "stalking" the officers processing the mail and his food contained a 3½ to 4 inch coiled wire in his apple sauce.  ECF No. 4 at pp. 9 – 10.  Sewell concludes that there is a "causal connection" between his litigation and the "multiple adverse actions against" him.  *Id*.  He claims however that the Warden and the Commissioner of Correction refuse to discharge the officers responsible for the alleged harassment.  *Id*. at p. 10.

Sewell claims that on June 12, 2012, he was given legal mail by Officer Troutman, but other officers on the 11 p.m. to 7 a.m. shift "were all coordinating and authorizing unlawful acts intentionally against [him] causing emotional distress, mental anguish, and discriminatory animus against [him]."  *Id*.  Sewell states that he attempted to file declarations and two motions requesting intervention with the Fourth Circuit Court of Appeals on April 23 and 24, 2012; May 8, 2012; and June 1 and 23, 2012.  He states these documents never reached the Court of Appeals[4] because the officers are trying to make him disappear.  *Id*.  Some of Sewell's claims are

---

[2] A review of the informal brief submitted in the case referenced by Sewell disproves his assertion as it is written in his handwriting with no additions or deletions made in any other handwriting.  *See Sewell v. Stouffer et al.*, No. 12-6700 at Doc. 29 (4th Cir. 2012).

[3] A review of both appellate dockets does not support Sewell's claim.  *See Sewell v. Stouffer, et al.,* No. 12-6700 (4th Cir. 2012) and *Sewell v. Stouffer, et al.,* No. 12-6680 (4th Cir. 2012).

[4] In Case No. 12-6700 the docket reflects Sewell filed a Motion for Relocation on May 4, 2012 (Docket 14); a Document referencing denial of access to courts and imminent danger on June 11, 2012 (Docket 24 and 25); a Motion for Urgent Intervention on June 20, 2012 (Docket 28); letter regarding imminent danger and supplemental Motion for Intervention on June 21, 2012 (Docket 30 and 31);  and letters or documents referencing imminent

his speculation that certain officers have a personal vendetta against him and change tactics often in order to avoid being held responsible.  *Id.* at p. 11.

Sewell claims that in July, 2012, Officers Preston, Fazenbaker, Penrod, Wilson, Crites, Syverstad, Gordon, and Forney authorized D-tier and A-B tier officers to give his legal mail to inmates housed in Unit 1, cells D-16 and 18.  ECF No. 4 at p. 12.  He claims other pieces of legal mail were going to other tiers.  Sewell then states he cannot defend himself against multiple threats coordinated by the officers with "Sunni Muslims, DMI, Aryan Skin Heads, BGF, Bloods, etc." *Id.*

Sewell alleges on August 2, 2012, Officer Lipscomb came to the window of his cell and cussed him out for no reason.  *Id.*  On August 3, 6, and 9, 2012, Sewell claims that "there was so much suspicious behavior [he] could not keep up with it all" and that custody staff failed to serve him a priority package which was legal mail.  *Id.* at pp. 12 – 13.  Sewell alleges that Officers McKinney and Kelly taunted him with the package and that he does not know what was done with it.  *Id.* at p. 13.  On August 9, 2012, Sewell claims Officers Wilt and Lipscomb purposely avoided him and gave his legal mail to Sunni Muslims.  *Id.*

Sewell claims his cell door was opened by Officers Farris, Ort, Self, Gutillo and Baer, while he was sleeping.  He states he filed an administrative remedy procedure request (ARP), but nothing "meaningful was done to sanction or remove the officers."  *Id.*  Sewell claims on September 4 and 7, 2012, Officers Fann and Marchinke tried to have him ambushed in the shower.  He states they came to his cell and skipped the cells around him.  Sewell claims that he

---

danger, mail sabotage, ongoing personal conduct, prison conditions, and life threatening conditions on July 2, July 30, August 17, August 27, September 10, September 18, and October 22, 2012.  (Dockets 35 – 42).  In case number 12-6680, Sewell filed a Motion for Relocation on April 19, 2012 (Docket 8); a supplemental Motion for Relocation on May 4, 2012 (Docket 9); a Motion for Intervention on June 20, 2012 (Docket 18); a supplemental Motion for Intervention on June 21, 2012 (Docket 19); documents and letters referencing imminent danger, mail tampering, ongoing conduct, and prison conditions were filed between July 2, 2012 and September 10, 2012 (Dockets 25 – 30).

was "given a statement" on December 21, 2011, that "the only way he leaves North Branch is in a body bag" which was signed by the DMI.[5]  Sewell claims this is proof that he has enemies which are not acknowledged by prison staff.  ECF No. 4 at p. 14. In addition, Sewell alleges that prison officials will never admit they forced enemies on him and that they have failed to process all mail tampering and personal abuse ARPs.  *Id.*

Sewell states that on September 10, 2012, Officer Gorer and an unknown officer were given seven letters addressed to the ACLU, Patuxent, Congressman Chris Van Hollen, State Treasurer Nancy Kopp, Senior Judge of the Third Circuit in Philadelphia, "Clerk Norfolk, Va.," and his Aunt, but both officers failed to put his mail in the outgoing box.  *Id.*  Sewell claims the mail was taken to the opposite side of the tier and destroyed or censored.  *Id.*  He claims on September 12 and 20, 2012, that mail addressed to: the undersigned, ACLU, the Clerk for the United States Court of Appeals, Mailroom Supervisor Kathy Jacobs, the Warden, the library coordinator for the Maryland Department of Public Safety, and the director of the Internal Investigations Unit (IIU) were given to Officer Crowe who put the mail in the case manager's box instead of the outgoing mail box.  *Id*. at pp. 14 – 15.   On September 12, 2012, Sewell further claims that Officer Ort used an inmate "as a puppet to state, 'we gotta kill him' " while an IIU investigation was being conducted.  *Id*. at p. 15.

Sewell asserts that Officer J. Witt has harassed him for six months by slamming the slot in his cell door so hard "you can feel the reverberation."  *Id*. at p. 16.  On September 18, 2012, Sewell states he attended a disciplinary hearing for refusing a housing assignment and Sewell submitted "sworn testimony" regarding the various incidents of harassment he experienced.  He states that Lt. Dale Smith came to the hearing room and "gave sworn testimony that the incidents were investigated," but when Sewell asked to see the documentation of the investigation the

---

[5] Dead Men Incorporated or DMI is a prison gang.

hearing was abruptly ended.  *Id*. at p. 16. He further claims that the Unit Manager made a flagrant misrepresentation that he had only brought the personal misconduct matter to the attention of prison officials that day.  Sewell states he is persistently attacked by gang and religious organizations.  *Id*.  He claims that Officers Reieke, Wilson, Yutzy, Prestion, Witt, Lipscomb, Forney, Bulger, McAlpine, Lucas, Fazenbaker, Smith, Sweeney and Lodgson regularly stalk him and that whenever they are working he does not receive his mail.  ECF No. 4 at p. 17.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' "  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

<u>Access to Courts</u>

Prisoners have a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' " *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Defendants have submitted verified business records indicating that Sewell's claims regarding his mail were investigated and found to be without merit. On one occasion, Sewell

complained about his mail not reaching its destination, but then refused to cooperate with the investigation of his claims.  ECF No. 12 at Ex. 7, pp. 3 – 5.  Officers whom he accuses of interfering with his outgoing mail deny any wrongdoing and mail logs of incoming legal mail indicate that Sewell receives legal mail on a regular basis.  *Id.* at Ex. 1, 2, 3, 4, and 6.  Moreover, a review of the docket entries in Sewell's cases that were pending in the Fourth Circuit Court of Appeals during the relevant time period indicates that numerous papers were received and docketed.[6]  Sewell has also filed prolifically in the instant case.  *See* ECF Nos. 3, 4, 5, 6, 7, 8, 10, 13, 14, 16, and 17.  To the extent his claims are unsuccessful, it is not due to missed deadlines or a failure to respond; thus he has suffered no actual injury due to alleged interference with his mail.  Defendants are, therefore, entitled to summary judgment on this claim.

<u>Harassment</u>

Verbal abuse of inmates by guards, without more, states no claim of assault.  *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979).  However, a threat of harm combined with action apparently designed to carry out the threat may state Eighth Amendment claim.  *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978).  It also may state a claim of denial of access to courts if threats were intended to intimidate inmate from exercising that right.  *Id.*, *see also Russell v. Oliver*, 552 F.2d 115 (4th Cir. 1977).  Harassment together with a bread and water diet and the arbitrary use of tear gas states a claim of cruel and unusual punishment.  *Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir. 1975); *LaReau v. MacDougall*, 473 F.2d 974 (2d Cir. 1972), *cert. denied*, 414 U.S. 878 (1973); *Landman v. Royster*, 354 F. Supp. 1302 (E.D. Va. 1973).

Sewell's claims that officers are stalking him or stalking his legal mail are bald assertions not subject to objective proof.  The nature of correctional institutions requires the vigilance of the

---

[6] *See Sewell v. Stouffer, et al.,* No. 12-6700 (4th Cir. 2012) and *Sewell v. Stouffer, et al.,* No. 12-6680 (4th Cir. 2012).

employees charged with maintaining its security; thus, officers who are attentive to activities of prisoners, to include which among them is disgruntled, are simply doing their jobs. Sewell's other claims that officers are using other inmates as puppets to communicate threats to him, passing out his legal mail to other inmates to read, and slamming the slot in his door too hard are also his subjective view incapable of objective proof. Sewell points to no objective evidence that officers are recruiting inmates to threaten him other than his belief that it is occurring. The fact that other inmates are aware of Sewell's litigious nature is simply not enough to infer that officers are allowing other inmates to read and alter his legal papers, a claim that is not supported by review of the documents filed with the Fourth Circuit. Defendants are entitled to summary judgment on this claim.

### Failure to Protect

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id* at 837.  *See also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Sewell's claim that he "stands alone" and that virtually every group of prisoners are focused on harming him is, again, based on his subjective interpretation of interactions he has had with other prisoners, most of whom he does not name.  Sewell's global assertions that everyone he encounters intends him some type of harm does not qualify as a known risk of harm, especially where, as here, repeated investigations are either thwarted by Sewell's lack of cooperation or fail to reveal any evidence to support his allegations.  *See* ECF No. 12 at Ex. 1, 2, and 7.  Sewell's current housing assignment is disciplinary segregation where he is housed in a cell alone.  At all times he is outside of his cell, he is escorted by a correctional officer. Additionally, he is placed in a recreation area alone.  *Id*. at Ex. 2, p. 2.  Sewell's subjective fears alone are not enough to establish an Eighth Amendment violation.  Defendants are entitled to summary judgment on this claim.

A separate Order granting Defendants' Motion for Summary Judgment and denying Plaintiff's Motion for Intervention follows.


Date:   March 22, 2013                                    /s/
                                          DEBORAH K. CHASANOW
                                          United States District Judge